UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RONALD HUDSON,                          )        NO. CV 12-10452 AGR
                                        )
            Plaintiff,                  )
                                        )
        v.                              )
                                        )        MEMORANDUM OPINION AND
CAROLYN W. COLVIN,                      )        ORDER
Commissioner of Social Security,        )
                                        )
            Defendant.                  )
                                        )

        Ronald Hudson filed this action on December 6, 2012.  Pursuant to 28

U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on

December 27, 2012 and January 11, 2013.  (Dkt. Nos. 6-7.)  On July 11, 2013,

the parties filed a Joint Stipulation ("JS") that addressed the disputed issue.  The

court has taken the matter under submission without oral argument.

        Having reviewed the entire file, the court affirms the decision of the

Commissioner.

**I.**

## PROCEDURAL BACKGROUND

On October 1, 2009, Hudson filed applications for disability insurance benefits and supplemental security income benefits.  In both applications, Hudson alleged an onset date of June 18, 2009.  Administrative Record ("AR") 25, 128, 132.  The applications were denied.  AR 25, 80-81.  Hudson requested a hearing. On April 7, 2011, an Administrative Law Judge ("ALJ") conducted a hearing at which Hudson and a vocational expert testified.  AR 46-79.  On June 16, 2011, the ALJ issued a decision denying benefits.  AR 22-35.  On August 31, 2012, the Appeals Council denied the request for review.  AR 5-9.  This action followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.**

**DISCUSSION**

### A.    Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.    The ALJ's Findings

The ALJ found that Hudson met the insured status requirements through December 31, 2014.  AR 27.  He had the severe impairment of degenerative disc disease of the lumbar spine.  AR 27.

Hudson had the residual functional capacity ("RFC") to "lift and carry 20 pounds occasionally and ten pounds frequently; to stand[/]walk six hours in an eight-hour day; and sit six hours in an eight-hour day."  AR 28.  He "would be limited to only occasional climbing, stooping, balancing, kneeling, crouching and crawling.  [He] must also avoid concentrated exposure to humidity and fumes, odors, dusts, gases, and poor ventilation.  Further, [he] would be limited to only sitting for 30 minutes before having to stand for up to ten minutes and could only stand and walk for 20 minutes before having to sit down for at least 15 minutes."  AR 28.  Although Hudson was unable to perform past relevant work, there were jobs in significant numbers in the national economy that he could perform such as cashier II, office helper and storage facilities clerk.  AR 32-34.

### C.    Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must

3

determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  The ALJ found that Hudson's medically determinable impairments could reasonably be expected to cause some symptoms.  AR 30.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).  The ALJ found that Hudson's statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent inconsistent with the RFC.  AR 30.

In weighing credibility, the ALJ may consider factors including:  the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13)[1] (quotation marks omitted).  The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a

---

[1]  "Social Security Rulings do not have the force of law.  Nevertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

1 │ claimant's statements and activities; (c) exaggerated complaints; and (d) an
2 │ unexplained failure to seek treatment.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59
3 │ (9th Cir. 2002).

4 │     The ALJ noted that the sit/stand options in the RFC were taken from
5 │ Hudson's testimony.  AR 30.  Hudson was limited to sitting for 30 minutes before
6 │ having to stand for up to ten minutes, and to standing/walking for 20 minutes
7 │ before having to sit down for at least 15 minutes.  AR 28, 64-66.

8 │     Hudson argues that he also testified that he has to lie down for about 90
9 │ minutes twice a day to relieve his pain.  JS 4, 6.  However, Hudson testified that
10 │ he takes ibuprofen for back swelling and pain.  AR 71-72.  Hudson testified that
11 │ he takes Flexeril "[m]aybe once or twice a day" and sleeps about an hour and a
12 │ half after taking it.  AR 71.  Hudson testified:  "The Flexeril, I can relax.  I can't
13 │ sleep at night, so I do take it hoping I can sleep that night."[2]  AR 72.  The ALJ
14 │ could reasonably construe Hudson's testimony as stating that he takes ibuprofen
15 │ for back pain and takes Flexeril at night to relax and sleep.  Accordingly, there
16 │ would be no need to discount this testimony.  When the evidence is susceptible
17 │ to such a rational interpretation, the court must defer to the Commissioner's
18 │ decision.  *Moncada*, 60 F.3d at 523.

19 │     Otherwise, the ALJ discounted Hudson's credibility for two reasons:  (1) the
20 │ objective medical evidence did not support the degree of disability alleged; and
21 │ (2) conservative treatment after the onset date was inconsistent with disabling
22 │ symptoms.  AR 30-31.

23 │     **1.   Objective Medical Evidence**

24 │     "Although lack of medical evidence cannot form the sole basis for
25 │ discounting pain testimony, it is a factor that the ALJ can consider in his credibility
26 │ analysis."  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

27 │
28 │     [2]  Hudson testified that he sleeps on an exercise mat on the floor, and not
     │ in bed.  AR 75.

1   The ALJ's finding is supported by substantial evidence.  The ALJ noted

2   that, prior to the onset date of June 18, 2009, Hudson had surgery on March 1,

3   2005, to treat spondylolisthesis at L4-L5 or L5-S1, osteotomy of the posterior

4   elements of L4-L5 and L5-S1, and pedicle screw fixation, segmental

5   instrumentation, and posterior as well as posterolateral fusion at L4-L5 or L5-S1.

6   AR 30, 365.  At a follow-up visit six months later, Hudson reported that all of his

7   preoperative pain was gone.  AR 355.  The surgeon noted that Hudson was able

8   to squat, stoop and bend without difficulty, and had good strength in both lower

9   extremities.  AR 355.

10   The ALJ accurately summarized the objective medical findings in 2007-

11   2009.  AR 30, 337-52.  An MRI noted post surgical changes and revealed no

12   evidence of recurrent disc herniation, spinal stenosis, nerve root impingement or

13   neural foraminal narrowing.  AR 30, 345.  A CT scan of the lumbar spine

14   indicated mild annular bulge at L3-4, mildly indenting the ventral surface of the

15   thecal sac, mild ligamentous hypertrophy, and no obvious neural impingement;

16   and degenerative disc disease with annular bulge osteophyte complex at L4-5,

17   mild indentation of ventral surface of thecal sac and no obvious neural

18   impingement.  AR 30, 343.  The lumbar myelogram revealed no evidence of

19   significant thecal sac or nerve root impingement.  AR 341.  Further, there were no

20   side effects reported in the records.

21   **2.  Conservative Treatment**

22   The ALJ found that Hudson received conservative treatment after the onset

23   date.  AR 31.  Hudson has been treated with medication.  AR 347-48.  In

24   December 2009, the surgeon reported that Hudson complained of pain "which is

25   lateralized basically in the right paramuscular area.  He states that there is what

26   he calls pressure with activity and he cannot stand on his leg for very long without

27   that area in the right paraspinal region affecting him."  AR 337.  The surgeon

28

6

1  concluded that surgery had nothing to offer and referred him to pain

2  management. *Id.*

3        Hudson testified that since his surgery he has not had any epidural

4  injections and did not want them.  AR 73-74, 337.  The ALJ could reasonably

5  infer that the pain was not as disabling as Hudson alleged.  AR 31.

6        The ALJ's finding of conservative treatment is supported by substantial

7  evidence.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)

8  (medication constitutes conservative treatment).

9  **IV.**

10  **ORDER**

11        IT IS HEREBY ORDERED that the decision of the Commissioner is

12  affirmed.

13        IT IS FURTHER ORDERED that the Clerk serve copies of this Order and

14  the Judgment herein on all parties or their counsel.

15

16

17  DATED:  August 12, 2013

                                 ALICIA G. ROSENBERG

18                               United States Magistrate Judge